### YAUGHN v. UNITED STATES.
#### No. 8510.

Circuit Court of Appeals, Fifth Circuit.
Dec. 14, 1937.

Paul M. Conaway and E. W. Maynard, both of Macon, Ga., for appellant.

T. Hoyt Davis, U. S. Atty., and H. G. Rawls, Asst. U. S. Atty., both of Macon, Ga., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, Bob Wesley Yaughn, was convicted and sentenced upon an indictment which charged in general terms that he on or about the 20th day of February, 1937, possessed distilled spirits, to wit, whisky, the container of which was unstamped.

The evidence tended to show that from June, 1936, to February 27, 1937, whisky was stored in quantities in the immediate neighborhood of a certain store in the outskirts of Macon, Ga., and that two trucks and two motorcycles operated by negro boys were used to bring in and to deliver in gallon tin cans tax unpaid whisky. The store was frequented by appellant, although he lived a mile away, and over a pay station telephone in the store orders for whisky were given. Yaughn knew that the federal officers were aware of this. He bought out the entire interest in the store in January, 1937. Later a telephone in the name of a fictitious grocery store was installed across the street from the store in the home of a negro woman, and over it the officers heard one of the motor-cycle boys call for Yaughn, and pursuant to the information found the boy with the motorcycle apparently broken down at the place he stated. These two motorcycles, or ones just like them, were caught delivering liquor several times, as were the two trucks. Whisky in tin cans was found in a closet at the negro woman's house, and on other occasions in the ruins of an old building near the store. Gallon cans and corks were several times found in the rear of the store, and a siphon, but no liquor. On February 20, 1937, ten ten-gallon unstamped kegs of whisky were found in the locked cold-storage room of an abandoned brewery near the store, which was approachable from the rear of the store. An old negro man lived in a room adjoining the cold-storage room. Two empty ten-gallon kegs were in a third room, not locked, along with cans and corks and a siphon, all similar to those which had been found in the rear of the store. The old negro claimed he had no connection with the whisky, and was acquitted. A clerk in the store at first said the whisky was Yaughn's, but later said and testified he himself had bought it a few hours before, but that the cans, stoppers, and siphon in the store were not his. His testimony was further impeached by a subsequent statement that he had "to take the rap," meaning assume the blame, or be considered "a rat." He pleaded guilty to the indictment. Without stating all the details, we think the evidence was sufficient to submit to the jury the question whether appellant was not all the while the real proprietor of the rather extensive whisky enterprise which was carried on around the store. There was no error in overruling the motion for an instructed verdict.

Several assignments of error insist that evidence of transactions before and after February 20, 1937, was irrelevant, the appellant assuming that he was on trial only for possessing the hundred gallons of whisky found that day. The circumstances indicating a liquor business of size and long-continuance would have been admissible to aid the jury in determining whether the clerk who testified that the hundred gallons were his spoke truly, seeing that he had gone to work at the store only in January, 1937, and had worked only two or three days a week when appellant would be away, and had received only $1.25 per day, and seeing that he testified that he had no delivery service. But the charge in the indictment was not thus limited. Under it,

unrestricted by any descriptive averments of time, place, or quantity, or by any bill of particulars, conviction might be had for possession of any quantity of illicit whisky on any date before the finding of the indictment and within the period of limitation. The allegation of time need not be strictly proven. Evidence of all possessions within the scope of the charge was admissible. Some of the evidence is claimed to relate to an occurrence after the finding of the indictment. It appears that it was after February 20, 1937, but not that it was after the finding of the indictment. Error does not appear as to it. The contention that occurrences before appellant acquired possession of the store ought to be excluded is not sustainable. The indictment makes no mention of the store, and it is not claimed that any whisky was possessed in the store. There is, moreover, some evidence that appellant had said he had an interest in the store in 1936. Whether appellant possessed any of the whisky wherever found was the question for the jury.

The old negro while testifying for the defense volunteered a statement on cross-examination that he and Yaughn had been in trouble together two years before. He was then asked what sort of trouble. Counsel objected, and moved a mistrial. The court sustained the objection but denied a mistrial. There does not appear to be any abuse of discretion in denying a mistrial.

The statement of the clerk that he was going "to take the rap" rather than be considered "a rat" was admitted only to impeach his testimony in the trial that he had bought the hundred gallons of whisky himself, and that it was not Yaughn's. A proper foundation for impeachment was laid in cross-examining the clerk. The evidence was admissible for that purpose.

The main witness for the government testified that the telephone he found in the negro woman's home was the same instrument that had been in the store across the street in 1936. Evidence was produced to the judge on hearing the motion for new trial that this was not true, but that it was a different but similar instrument installed in the house just before that in the store was taken out. There does not appear to be any formal motion for new trial for newly discovered evidence. An affidavit of diligence was made by counsel for appellant, but none by himself.

This new evidence from the employees of the telephone company was relevant and possibly important, but there was a lack of diligence in presenting it, in addition to the other defects mentioned above. The trial was begun May 6th in Macon, and the verdict was rendered May 8th. The witnesses were in that city and could easily have been found and produced in the trial. We find no occasion to overrule the discretion of the trial judge in refusing a new trial.

Affirmed.